UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 2715 MARIETTA, LLC | CIVIL ACTION |
| VERSUS | NO. 22-3292 |
| AXIS SURPLUS INSURANCE COMPANY | SECTION M (1) |

# ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by defendant Axis Surplus Insurance Company ("Axis") seeking dismissal of plaintiff's claims for bad-faith damages.[1] Plaintiff 2715 Marietta, LLC ("Plaintiff") responds in opposition,[2] and Axis replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

## I.    BACKGROUND

This is an insurance coverage dispute arising out of damage Plaintiff's property allegedly sustained during Hurricane Ida, which made landfall on August 29, 2021. At that time, Plaintiff's property was insured by Axis under a policy that provides coverage for direct physical loss or damage to the structure caused by or resulting from a windstorm.[4] The policy, however, excludes coverage "for loss or damage caused by or resulting from … [w]ear and tear [or] [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself …."[5] The policy also includes a pre-existing damage clause that excludes

---

[1] R. Doc. 17.
[2] R. Doc. 20.
[3] R. Doc. 26.
[4] R. Doc. 6-1.
[5] *Id.* at 79.

coverage "for any loss or damage which: (a) occurred prior to the inception of the policy regardless of whether such damages were apparent at the time of the inception of this policy; or (b) occurs after the inception of this policy but arises out of workmanship, repairs or failure to repair prior to the inception of this policy."[6]

On March 1, 2022, six months after Hurricane Ida made landfall in Louisiana, Plaintiff made a claim with Axis for storm-related roof damage that caused water to leak into the interior of the building.[7] Axis responded to the claim and assigned a field adjuster, who inspected the property.[8] The field adjuster found that the building's "metal roof show[ed] heavy signs of rust and wear and tear," resulting in "water damage in multiple rooms, offices and hallways …."[9] He also noted that the roof showed "prior repairs and patches," but he "did not see any apparent wind damage to the roof system" or "'lifted' metal panels due to high winds."[10] Moreover, he noted that the type of roof repairs he observed – namely, the application of roofing tar to the fasteners and joints on the metal roof – "will easily deteriorate and separate over time."[11] The field adjuster recommended an inspection by an engineer.[12]

Axis then hired Forcon International Corp. ("Forcon") to inspect the property.[13] A professional structural engineer employed by Forcon inspected Plaintiff's property and found that the 30-year-old metal roof "is severely corroded and has been patched numerous times throughout the years."[14] He also noted that "[t]he roof and gutters are beyond [their] useful service life" and

---

[6] *Id.* at 130.
[7] R. Docs. 17-4; 17-5.
[8] R. Docs. 17-5; 17-6; 17-7.
[9] R. Doc. 17-7 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4.
[13] R. Doc. 17-8.
[14] *Id.* at 1-4.

2

that "[n]o roof damage could be attributed due to winds from Hurricane Ida."[15] Instead, the Forcon engineer opined "that rain during Hurricane Ida entered an already corroded and faulty roof" due to "deteriorated patches and corrosion throughout the roof."[16] He further opined that roof damage "occurred over the years" and not as the result of "a one-time event."[17]

On May 6, 2022, citing the wear-and-tear and rust/corrosion exclusions and relying on the findings of the initial insurance adjuster and the Forcon engineer, Axis's independent adjuster informed Plaintiff that there was no coverage for the roof damage and resulting water intrusion.[18] Then, on June 27, 2022, without providing any additional photographs, invoices, estimates, or other documentation, Plaintiff's counsel wrote to Axis demanding the policy limits for the roof claim.[19] Axis, relying on the insurance policy, the adjuster's report, and the Forcon report, rejected the demand.[20] Thereafter, Plaintiff hired Public Service Adjusting, L.L.C. ("PSA") to inspect the property.[21] PSA found $298,252.09 in damages to the property, which Plaintiff demanded from Axis as "undisputed" amounts due.[22]

Axis responded by retaining another engineer, Kevin Vanderbook of Veco Consulting, LLC ("Veco"), to evaluate the conflicting estimates.[23] Vanderbook opined that any water intrusion "was due to the poor condition of the roof" and that "[i]t is likely this roof has been leaking sporadically for many years as evidenced by the poor condition of the roof surface and numerous previous repairs."[24] In a supplemental report, Vanderbook explained that he compared satellite

---

[15] *Id.* at 4.
[16] *Id.*
[17] *Id.*
[18] R. Doc. 17-9.
[19] R. Doc. 17-10.
[20] R. Doc. 17-11.
[21] R. Doc. 17-13 at 2.
[22] *Id.*
[23] R. Docs. 17-14 at 1; 17-15.
[24] R. Doc. 17-15 at 3.

3

images of the property from various dates between March 2013 and January 2019.²⁵ He said the images demonstrate that there was no patching or repair to the roof in 2013, but that beginning in 2014, the images show sealant applied at the overlap seams and repairs to the ridge.²⁶ Also, in January 2018, repairs are visible at the northwest corner of the roof.²⁷

On November 10, 2023, Plaintiff submitted an expert report to Axis to refute the reports of Forcon and Veco.²⁸ At this point, then, there is a dispute between Plaintiff's proposed expert engineer and the two retained by Axis as to the cause of the roof damage.

In the meantime, Plaintiff filed this suit asserting breach-of-contract and bad-faith claims against Axis.²⁹ According to Plaintiff, the insured property sustained storm-related roof damage that resulted in water infiltrating the building, which had not occurred prior to Hurricane Ida.³⁰ Plaintiff alleges that Axis's failure to pay its claim after receiving the PSA report was bad faith and that Axis's insurance adjusting process was "tantamount to bad faith treatment" because it was performed "well below accepted industry standards."³¹

## II.   PENDING MOTION

Axis moves for partial summary judgment, arguing that Plaintiff's bad-faith claims should be dismissed because there is a legitimate dispute between experts regarding the cause of the roof damage.³² Axis points out that it has acted in good faith to adjust Plaintiff's claim timely and is relying on the reports of its field adjuster and two engineers to deny coverage under applicable policy exclusions because all three found that there was no damage to the building caused by

---

²⁵ R. Doc. 17-16 at 2.
²⁶ *Id.*
²⁷ *Id.*
²⁸ R. Doc. 17-17.
²⁹ R. Doc. 1 at 1-10.
³⁰ *Id.* at 3.
³¹ *Id.* at 4.
³² R. Doc. 17-1 at 1-14.

4

Hurricane Ida, but rather that the roof showed significant pre-existing wear and tear.[33] Moreover, Axis argues that bad-faith penalties are inappropriate when the insurer has a reasonable basis to defend the claim, such as a legitimate question as to the extent and causation of the damage, and acts in good-faith reliance on that defense.[34]

In opposition, Plaintiff argues that the inspections by Axis's field adjuster and PSA constituted "satisfactory proof of loss," and yet Axis paid nothing based on alleged pre-existing damage to the roof.[35] According to Plaintiff, because (1) Axis insured the property knowing that the roof was at least seven years old and (2) the roof did not leak before Hurricane Ida, Axis should not be able to deny coverage based on the wear-and-tear exclusion.[36] Plaintiff further argues that summary judgment is inappropriate because there are a questions of material fact as to the cause of the roof damage.[37] In a last-ditch effort to stave off a dismissal of its bad-faith claims, Plaintiff attempts to invoke Rule 56(d) of the Federal Rules of Civil Procedure, claiming that it needs more discovery – namely, depositions of Axis's corporate representative and experts – to properly oppose the motion.[38]

In reply, Axis reiterates that there is no proof that its denial of Plaintiff's claim was in bad faith – that is, that it was arbitrary, capricious, or without probable cause – because Axis relied on the opinions of an adjuster and two engineers who all found no storm damage.[39] Axis also argues that the policy's pre-existing damage exclusion contradicts Plaintiff's argument that Axis is responsible for the damage because it knew the condition of the roof at the policy's inception.[40]

---

[33] *Id.* at 9-14.
[34] *Id.* at 7-9.
[35] R. Doc. 20 at 2, 9-10.
[36] *Id.* at 1-2, 10.
[37] *Id.* at 1-4, 10-12.
[38] *Id.* at 12-13. The Court will construe this as a Rule 56(d) motion.
[39] R. Doc. 26 at 1-6.
[40] *Id.* at 6-9.

Finally, Axis argues that the motion is not premature because Plaintiff conceded in his deposition that Axis investigated the claim and denied it based on the policy language and the opinions of the adjuster and two engineers.[41]

### III. LAW & ANALYSIS

#### A. Rule 56(d) of the Federal Rules of Civil Procedure

Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). As the Fifth Circuit has explained, the nonmovant must "show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (quotation omitted). "[V]ague assertions that additional discovery will produce needed, but unspecified, facts" are insufficient. *Id.* (quotation omitted). Instead, the nonmovant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quotation omitted).

Because Plaintiff did not attach the required affidavit or declaration to its opposition memorandum, the Court, quoting relevant portions of *January*, ordered Plaintiff to do so by noon on December 20, 2023.[42] On December 18, Plaintiff filed an affidavit executed by its attorney, Joseph F. LaHatte, III, in which he states that Plaintiff needs to depose Axis's corporate representatives regarding the underwriting inspection and the "policies and considerations it

---

[41] *Id.* at 9-10.
[42] R. Doc. 22.

6

undertook when denying Plaintiff's" claim.[43]  LaHatte also states that Plaintiff needs to depose Axis's adjusters and engineers "regarding their methodology and communications with A[xis] when preparing their reports in this matter."[44]  LaHatte states that he "believes" these depositions will yield facts "fundamental to a proper determination of bad faith in this matter."[45]

LaHatte's affidavit is insufficient to sustain Plaintiff's Rule 56(d) burden.  It consists of nothing more than vague assertions that the depositions will result in "needed, but unspecified, facts."  *See January*, 74 F.4th at 651.  LaHatte offers no plausible basis for believing that specific facts germane to bad faith probably exist, nor does he indicate how these unspecified facts will influence the outcome of the pending summary-judgment motion.  *See id.*  Instead, he offers only the belief that the depositions will adduce facts that are "fundamental" in some unexplained way to a determination of bad faith.  As explained by the Fifth Circuit in *January*, this is simply not enough.  Plaintiff's Rule 56(d) motion is denied.

### B. Axis's Motion for Partial Summary Judgment

#### 1. Summary-Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the

---

[43] R. Doc. 30 at 1-2
[44] *Id.* at 2.
[45] *Id.*

initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**2. Analysis**

"In order to establish a cause of action for penalties and/or attorney fees and costs under [La. R.S. 22:1892, formerly] La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009). Similarly, La. R.S. 22:1973 authorizes an award of penalties when an insurer's failure to pay a claim within 60 days after the receipt of a satisfactory proof of loss is "arbitrary, capricious, or without probable cause." La. R.S. 22:1973(B)(5). The prohibited conduct in each statute is virtually identical with the primary difference being a 30- or 60-day period for payment of claims. *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000).

"The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003)). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). "[W]hen there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021); *see also Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss."); *Brown v. State Farm Mut. Auto. Ins. Co.*, 93 So. 3d 697, 702 (La. App. 2012) (affirming summary judgment holding that an insurer did not act in bad faith by refusing to "pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss"); *Jones v. Gov't Emps. Ins. Co.*, 220 So. 3d 915, 924 (La. App. 2017) (affirming summary judgment holding that insurer did not act arbitrarily and capriciously in delaying payout of disputed claim, and observing: "It is settled law that when an insurer has a reasonable basis for defending a claim and acts in good-faith reliance on that defense, statutory penalties are inappropriate."); *Bell v. Steckler*, 285 So. 3d 561, 571-72 (La. App. 2019) (affirming summary judgment dismissing bad-faith claim against insurer for lack of evidence that the insurer acted vexatiously or that there was no valid dispute as to coverage). Plaintiff bears the burden of showing that an insurer acted in bad faith. *Guillory*, 16 So. 3d at 1126-27.

Here, the undisputed facts surrounding the adjustment process demonstrate that Axis did not act in bad faith in refusing to pay Plaintiff's insurance claim. Axis expeditiously sent an adjuster to inspect the property, and on the adjuster's recommendation, hired an engineer to provide a second opinion. Only then did Axis deny the claim based on the experts' findings and the policy exclusions. Axis was not obligated to pay the loss as found by Plaintiff's adjuster, PSA, because there is a legitimate dispute among the experts as to the cause of the loss. In fact, after receiving the PSA report, Axis hired yet another engineer to provide yet another opinion. Moreover, even if Axis insured the property knowing that the roof had signs of wear and tear, it did not act unreasonably in doing so. While the policy specifically excludes pre-existing damage and damage caused by wear and tear, rust, or other corrosion apparent at the inception of the policy or occurring after the inception due to a failure to repair, the policy provides coverage for other loss including, for example, windstorm damage. In denying coverage in this instance, Axis was within its rights to rely on the experts and the policy language. This is not bad faith.

This case is analogous to *Bellina v. Liberty Mutual Insurance Company*, 2021 WL 1295018, at *5-7 (E.D. La. Apr. 7, 2021), where the court granted summary judgment to the insurer and dismissed the plaintiff's bad-faith claims because there was a legitimate dispute regarding whether coverage for the roof damage was barred by the policy's wear-and-tear exclusion. There, the court held that the insurer had a good-faith reason to find that the exclusion applied and to deny the claim when the insurer's adjuster found signs of long-term wear on the roof. *Id*. The court noted that "[w]hen an insurer has a good-faith reason to believe that an exclusion bars coverage, it does not act in bad faith by not paying on the claim and instead choosing to litigate the question of coverage." *Id.* at *7 (citing *Estate of Munsterman v. Unitrin Auto & Home Ins.*, 307 So. 3d 297, 306 (La. App. 2020) (denying bad-faith damages where an insurer "had a legitimate and reasonable

11

doubt about coverage" based on a policy exclusion); *Tally v. Blue Cross Blue Shield of La.*, 760 So. 2d 1193, 1195-96 (La. App. 2000) (finding that insurer did not act in an arbitrary and capricious manner in denying payment because the insurer had just and reasonable grounds to believe that an exclusion applied); *Marcelle v. S. Fid. Ins. Co.*, 954 F. Supp. 2d 429, 435-36 (E.D. La. 2013) (same)). In like fashion, this Court finds that Axis did not act in an arbitrary and capricious manner in denying Plaintiff's claim because it had just and reasonable grounds, including its experts' investigations and opinions, to believe that the policy exclusion applies. Accordingly, the Court grants Axis's motion for partial summary judgment as to Plaintiff's bad-faith claims.[46]

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Rule 56(d) motion (R. Doc. 20) is DENIED.

IT IS FURTHER ORDERED that Axis's motion for partial summary judgment (R. Doc. 17) is GRANTED, and Plaintiff's claims for bad-faith damages are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 19th day of December, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[46] Although the Court dismisses the Plaintiff's bad-faith claims at this juncture, it does not now resolve the dispute between the parties concerning coverage – an issue that remains for trial.