UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 2715 MARIETTA, LLC | CIVIL ACTION |
| VERSUS | NO. 22-3292 |
| AXIS SURPLUS INSURANCE COMPANY | SECTION M (1) |

### ORDER & REASONS

Before the Court are two motion *in limine* filed by defendant Axis Surplus Lines Insurance Company ("Axis") seeking to exclude five of plaintiff's purported expert witnesses.[1] Plaintiff 2715 Marietta, LLC ("Plaintiff") responds in opposition,[2] and Axis replies in further support of its motions.[3] Also before the Court is Axis's motion for summary judgment,[4] to which Plaintiff responds in opposition,[5] and Axis replies in further support of its motion.[6] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

This is an insurance coverage dispute arising out of damage Plaintiff's property allegedly sustained during Hurricane Ida, which made landfall on August 29, 2021. At that time, Plaintiff's property was insured by Axis under a policy that provides coverage for direct physical loss or damage to the structure caused by or resulting from a windstorm.[7] The policy, however, excludes coverage "for loss or damage caused by or resulting from … [w]ear and tear [or] [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to

---

[1] R. Docs. 33; 34.
[2] R. Docs. 41; 42.
[3] R. Docs. 45; 46.
[4] R. Doc. 35.
[5] R. Doc. 43.
[6] R. Doc. 44.
[7] R. Doc. 6-1.

damage or destroy itself ….".[8] The policy also includes a pre-existing damage clause that excludes coverage "for any loss or damage which: (a) occurred prior to the inception of the policy regardless of whether such damages were apparent at the time of the inception of this policy; or (b) occurs after the inception of this policy but arises out of workmanship, repairs or failure to repair prior to the inception of this policy."[9]

On March 1, 2022, six months after Hurricane Ida made landfall in Louisiana, Plaintiff made a claim with Axis for storm-related roof damage that caused water to leak into the interior of the building.[10] Axis responded to the claim and assigned a field adjuster, who inspected the property.[11] The field adjuster found that the building's "metal roof show[ed] heavy signs of rust and wear and tear," resulting in "water damage in multiple rooms, offices and hallways …."[12] He also noted that the roof showed "prior repairs and patches," but he "did not see any apparent wind damage to the roof system" or "'lifted' metal panels due to high winds."[13] Moreover, he noted that the type of roof repairs he observed – namely, the application of roofing tar to the fasteners and joints on the metal roof – "will easily deteriorate and separate over time."[14] The field adjuster recommended an inspection by an engineer.[15]

Axis then hired Forcon International Corp. ("Forcon") to inspect the property.[16] A professional structural engineer employed by Forcon inspected Plaintiff's property and found that the 30-year-old metal roof "is severely corroded and has been patched numerous times throughout

---

[8] *Id.* at 79.
[9] *Id.* at 130.
[10] R. Docs. 17-4; 17-5.
[11] R. Docs. 17-5; 17-6; 17-7.
[12] R. Doc. 17-7 at 3.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 4.
[16] R. Doc. 17-8.

the years."[17] He also noted that "[t]he roof and gutters are beyond [their] useful service life" and that "[n]o roof damage could be attributed due to winds from Hurricane Ida."[18] Instead, the Forcon engineer opined "that rain during Hurricane Ida entered an already corroded and faulty roof" due to "deteriorated patches and corrosion throughout the roof."[19] He further opined that roof damage "occurred over the years" and not as the result of "a one-time event."[20]

On May 6, 2022, citing the wear-and-tear and rust/corrosion exclusions and relying on the findings of the initial insurance adjuster and the Forcon engineer, Axis's independent adjuster informed Plaintiff that there was no coverage for the roof damage and resulting water intrusion.[21] Then, on June 27, 2022, without providing any additional photographs, invoices, estimates, or other documentation, Plaintiff's counsel wrote to Axis demanding the policy limits for the roof claim.[22] Axis, relying on the insurance policy, the adjuster's report, and the Forcon report, rejected the demand.[23]

Thereafter, Plaintiff hired Public Service Adjusting, L.L.C. ("PSA") to inspect the property.[24] The PSA personnel working on Plaintiffs claim included Tina Nabhan, Nedal Nabhan, and Christina Muha. On July 14, 2022, Muha, who is a licensed public adjustor in Indiana, Ohio, Michigan, and Florida, inspected the property and prepared a damage report.[25] Another PSA employee then used Muha's inspection report to prepare an Xactimate estimate of the repair costs, which was approved by Nedal Nabhan, who is a licensed public adjustor in Louisiana.[26] Nedal

---

[17] *Id.* at 1-4.
[18] *Id.* at 4.
[19] *Id.*
[20] *Id.*
[21] R. Doc. 17-9.
[22] R. Doc. 17-10.
[23] R. Doc. 17-11.
[24] R. Doc. 17-13 at 2.
[25] R. Doc. 34-5 at 1-10.
[26] R. Doc. 34-4 at 2-5.

3

Nabhan did not analyze the damage or its cause.[27] Tina Nabhan, the owner of PSA, did not conduct any analysis of the property damage, including its cause or repair cost.[28] Instead, she worked on Plaintiff's file only in an administrative capacity.[29] PSA found $298,252.09 in damages to the property, which Plaintiff demanded from Axis as "undisputed" amounts due.[30]

Axis responded by retaining another engineer, Kevin Vanderbook of Veco Consulting, LLC ("Veco"), to evaluate the conflicting estimates.[31] Vanderbook opined that any water intrusion "was due to the poor condition of the roof" and that "[i]t is likely this roof has been leaking sporadically for many years as evidenced by the poor condition of the roof surface and numerous previous repairs."[32] In a supplemental report, Vanderbook explained that he compared satellite images of the property from various dates between March 2013 and January 2019.[33] He said the images demonstrate that there was no patching or repair to the roof in 2013, but that beginning in 2014, the images show sealant applied at the overlap seams and repairs to the ridge.[34] Also, in January 2018, repairs are visible at the northwest corner of the roof.[35]

On November 10, 2023, Plaintiff submitted to Axis an expert report dated November 3, 2023, that was prepared by Michael Gurtler and Joseph Rickett of Gurtler Bros. Consultants, Inc. ("Gurtler Bros.")[36] Gurtler inspected the property on October 27, 2023.[37] By then, the roof had been replaced.[38] Rickett, a licensed civil engineer, wrote the analysis portion of the report.[39] The

---

[27] *Id.* at 5.
[28] R. Doc. 34-3 at 5.
[29] *Id.* at 8.
[30] R. Doc. 17-13 at 2.
[31] R. Docs. 17-14 at 1; 17-15.
[32] R. Doc. 17-15 at 3.
[33] R. Doc. 17-16 at 2.
[34] *Id.*
[35] *Id.*
[36] R. Docs. 17-17; 33-4.
[37] R. Doc. 33-3 at 4.
[38] *Id.* at 10.
[39] R. Docs. 33-4 at 20; 33-6 at 4.

4

Gurtler Bros. report stated that the property sustained damage caused by the wind and rain of Hurricane Ida, including "wind-created openings in the roofing, flashing and gutters" that allowed water to enter the building.[40] Notably, Gurtler did not observe any wind-created openings in the roof, but instead, based this opinion on the tenant's eyewitness account of water intrusion during the storm and his own training and experience regarding storm-related building damage.[41]

In the meantime, on September 15, 2022, Plaintiff had filed this suit, asserting breach-of-contract and bad-faith claims against Axis.[42] According to Plaintiff, the insured property sustained storm-related roof damage that resulted in water infiltrating the building, which had not occurred prior to Hurricane Ida.[43] Axis now moves to exclude the testimony, opinions, and reports of Gurtler, Rickett, Tina Nabhan, Nedal Nabhan, and Muha.[44] Axis also moves for summary judgment on Plaintiff's breach-of-contract claim.[45]

## II.    LAW & ANALYSIS

### A. Axis's *Daubert* Motions *In Limine*

#### 1. Legal Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[40] R. Doc. 33-4 at 1-3.
[41] R. Doc. 33-3 at 10-16.
[42] R. Doc. 1 at 1-10. This Court granted Axis's motion for partial summary judgment regarding Plaintiff's bad-faith claims, dismissing those claims with prejudice. R. Doc. 32.
[43] R. Doc. 1 at 3.
[44] R. Docs. 33; 34.
[45] R. Doc. 35.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding

of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A*., 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is

inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

### 2. Axis's *Daubert* motion *in limine* regarding Michael Gurtler and Joseph Rickett

Axis, while conceding that Gurtler and Rickett are qualified to testify as expert civil engineers regarding the cause of property damage, argues that their testimony should be excluded as unreliable, inaccurate, and confusing to the jury.[46] As to Gurtler, Axis argues that he does not have a reliable basis to support his opinions regarding hurricane-caused roof and gutter damage because, by the time he inspected the property, the roof and gutters had been replaced and he did not view any pre-replacement photographs of the roof before issuing his report.[47] Instead, Gurtler based his opinions regarding roof damage on statements made by the tenant.[48] Gurtler did not observe, and had no direct evidence of, wind-created roof openings.[49] Further, Gurtler could not determine whether other damage pre-dated Hurricane Ida.[50] With respect to Rickett, Axis argues that his opinions should be excluded because he did not inspect the property, performed no analysis or testing as to causation, and his testimony would be duplicative of Gurtler's testimony.[51]

In opposition, Plaintiff argues that Gurtler's methodology of inspecting the property, interviewing the tenant, and reviewing other damage reports regarding the property is sound.[52] Plaintiff further argues that Gurtler's opinions regarding the roof, gutter, and window damage are reliable because they are based on his observations, training, and experience, as well as an

---

[46] R. Doc. 33.
[47] R. Doc. 33-1 at 3-8.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.* at 8-11.
[52] R. Doc. 42 at 5-7.

8

eyewitness account of what occurred during the storm.[53] As to Rickett, Plaintiff argues that his testimony is relevant and reliable because, as an expert, he can rely on another expert's observations.[54]

Axis replies, arguing that Plaintiff "cherry picked" deposition testimony of Gurtler and Rickett that supports its position regarding the roof damage.[55] Axis contends that these experts have no scientific support for their methodology in determining that there was a storm-created opening in the roof because they did not see one with their own eyes and instead rely on the insured's representation that the roof did not leak before the storm.[56] Axis further argues that Rickett's testimony is unreliable because he performed no inspection, testing, or analysis, but relies on Gurtler's faulty inspection and unsupported conclusion.[57]

Axis does not contest the qualifications of either Gurtler or Rickett. Instead, Axis argues that Gurtler's opinions regarding the cause of the damage – particularly, a purported storm-related opening in the roof – are irrelevant because he inspected the property after the roof was repaired and based his opinions, at least in part, on statements made by the tenant. Axis points to Gurtler's deposition testimony to show that he cannot definitively testify that the storm created an opening in the roof. Plaintiff, on the other hand, points to deposition passages where Gurtler explains his opinions and why he believes there was a storm-related opening, even if he did not personally observe one. Axis's concerns regarding the evidence upon which Gurtler's opinions are based can be addressed through cross-examination and the presentation of countervailing expert testimony. Further, to the extent that Gurtler's testimony and opinions are relevant and reliable, so are those

---

[53] *Id.* at 7-17.
[54] *Id.* at 17-21.
[55] R. Doc. 46 at 2.
[56] *Id.* at 2-7.
[57] *Id.* at 7-8.

9

of Rickett that are based on Gurtler's inspection report. However, the Court cautions Plaintiff that cumulative testimony will not be permitted, and the Court will rule on such objections as they are raised at trial.

### 3. Axis's *Daubert* motion *in limine* regarding Tina Nabhan, Nedal Nabhan, and Christina Muha

Axis seeks to exclude all three PSA employees as expert witnesses.[58] As to Tina Nabhan, Axis argues that she cannot testify as an expert concerning the property damage because she did not inspect the property or prepare the estimate.[59] She had no involvement in this claim, says Axis, other than administrative duties and reviewing the estimate, damage report, and other documents for her deposition.[60] Axis argues that Nedal Nabhan should be excluded as an expert concerning the property damage and the repair cost because he did not inspect the property or conduct any analysis.[61] He reviewed for final approval the estimate that someone else prepared, but admitted at his deposition that portions of the estimate were inaccurate and that he had no evidence of a storm-created opening in the metal roof.[62] Moreover, argues Axis, the estimate is inadmissible as to any item of damage that has been repaired because the actual repair cost is the best evidence.[63] As to Muha, Axis points out that she was not identified in Plaintiff's Rule 26 disclosures as either a retained or non-retained expert.[64] Axis also argues that Muha is not qualified to testify as an expert because she is not a licensed public adjustor in Louisiana, nor does she have a contractor's license or any certificates or training in carpentry, electrical work, HVAC, plumbing, or engineering.[65] Further, Axis argues that Muha's opinions are not reliable because she made no

---

[58] R. Doc. 34.
[59] R. Doc. 34-1 at 2-3, 6-7.
[60] *Id.* at 3, 7-9.
[61] *Id.*
[62] *Id.*
[63] *Id.* at 13-14.
[64] *Id.* at 3, 9-10.
[65] *Id.* at 3-4; 10-11.

independent analysis of the cause of the damage and could not explain what damage was related to the storm and which was not.[66]

In opposition, Plaintiff maintains that all three PSA employees are qualified to testify as expert public adjustors.[67] Plaintiff argues that Nedal Nabhan's testimony is relevant because, as an expert, he is entitled to rely on others to inspect the property and prepare an estimate that he reviewed and approved.[68] As for Tina Nabhan, Plaintiff insists that she is qualified to testify about hurricane-related damage, and although she was not personally involved in the investigation of Plaintiff's claim, she can offer opinions that the photographs taken by Muha show water inside the building.[69] Finally, Plaintiff argues that Muha is a qualified public adjustor who is licensed in four states, albeit not Louisiana, and she actually inspected the property.[70] Plaintiff contends that its disclosure of PSA as the company that performed the inspections, together with its inclusion of Muha on the witness list, should suffice for an expert disclosure.[71]

Axis replies, arguing that Muha should be disqualified as an expert because Plaintiff failed to timely disclose her as such and because she offers no analysis or opinions as to the causation of the damage she "observed and documented."[72] Similarly, Axis contends that Nedal Nabhan should be excluded because he did not perform an inspection or analysis of the damage, or prepare the Xactimate report, but rather reviewed the work of other PSA employees.[73] Axis again points out that Nedal Nabhan testified at his deposition that several of the estimate items are inaccurate and need revision, meaning that his testimony will confuse the jury.[74] Further, Axis reiterates that Tina

---

[66] *Id.* at 3-4; 13-15.
[67] R. Doc. 41.
[68] *Id.* at 4-5.
[69] *Id.* at 5-6.
[70] *Id.* at 6-8.
[71] *Id.* at 8.
[72] R. Doc. 45 at 2-4.
[73] *Id.* at 4-7.
[74] *Id.*

11

Nabhan's testimony should be excluded because she had no personal involvement in Plaintiff's claim other than administration.[75]

Axis does not dispute the qualifications of Nedal Nabhan or Tina Nabhan. Instead, Axis argues that neither of them has sufficient personal knowledge of the Plaintiff's property damage. While it is true that Nedal Nabhan did not inspect the property or perform any analysis of the cause of the property damage, he granted final approval to the Xactimate estimate that was prepared by other PSA employees based on Muha's inspection. Axis also points out that Nedal Nabhan testified that some line items on the estimate require revision. These limitations go to the weight, not the admissibility of Nedal Nabhan's testimony, and can be addressed through vigorous cross-examination and the presentation of countervailing expert testimony. However, "to the extent any of the items damaged have been repaired, estimates are improper evidence for that item's repair costs; consequently, Plaintiff's evidence is limited to the actual repair costs." *Bhrahmani 1 LLC v. AmGUARD Ins. Co.*, 2023 WL 3474575, at *2 (W.D. La. May 15, 2023). Thus, Nedal Nabhan may not testify about estimates to repair damage that has been repaired.

Tina Nabhan's involvement with Plaintiff's claim is more removed than that of Nedal Nabhan. She testified at her deposition that she was not involved in Plaintiff's claim in any way except in an administrative capacity. She was not familiar with the details of the claim and only reviewed the documents to prepare for her deposition. Tina Nabhan did not inspect the property, perform any analysis, or have any involvement in the preparation of the Xactimate estimate. Thus, her testimony is not relevant or reliable, and she may not testify as an expert in this case.

Finally, Muha may not testify as an expert in this case either because Plaintiff failed to include her in its Rule 26 expert disclosures. Rule 26(a)(2)(B) of the Federal Rules of Civil

---

[75] *Id.* at 7-9.

Procedure requires a party to disclose the identity of any expert witness it may use at trial and generally must accompany this disclosure with a written report prepared and signed by the witness. The report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). An expert who fails to provide a report complying with Rule 26(a) should not be permitted to testify "unless such failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Plaintiff has not explained why its failure to properly disclose Muha as an expert was substantially justified or is harmless. However, because Plaintiff included Muha on its witness list and she was deposed by Axis, there is no unfair surprise in allowing her to testify as a *fact* witness as to her inspection of the property. In doing so, Muha may not testify as an expert. In other words, she cannot offer any opinions as to the causation of, or cost to repair, the damage she observed.

### B. Axis's Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must

13

use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such

facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Analysis

Axis argues that it is entitled to summary judgment in its favor dismissing Plaintiff's breach-of-contract claims because Plaintiff has no evidence that there was a storm-created opening in the roof that caused damage to leak into the building's interior.[76] In support of its argument, Axis cites the opinions of its field adjustor and the Forcon and Veco engineers that there was no storm-created opening in the building and instead the damage occurred due to the poor condition of the roof.[77] Axis also cites the deposition testimony of Gurtler, Rickett, and Muha that they did not see any storm-created openings or do any analysis to determine that there was one.[78] According to Axis, the storm-related damage to Plaintiff's property did not exceed the deductible.[79]

In opposition, Plaintiff argues that the roof did not leak prior to Hurricane Ida, but did leak after the storm, and that there are disputed issues of material fact regarding whether the storm caused the leaking.[80] Plaintiff contends that Axis cannot use unauthenticated Google Earth

---

[76] R. Doc. 35.
[77] R. Doc 35-1 at 3-5, 8.
[78] *Id.* at 5-6, 9-10.
[79] *Id.* at 6-7, 10-12.
[80] R. Doc. 43-2.

photographs to show the condition of the roof.[81]  Plaintiff also cites the deposition testimony of the property owner where he stated that the roof did not leak before the storm and the deposition testimony of Nedal Nabhan, Muha, Gurtler, and Ricketts where they opine that the storm created an opening in the building and that the cost to repair the resulting damage exceeded the deductible.[82]

Axis replies, arguing that it has established that there was no coverage for the claim because there was no storm-related opening and that the burden then shifted to Plaintiff to prove that there was one, which Plaintiff failed to do.[83]  Axis reiterates that none of Plaintiff's expert witnesses testified that he or she saw a storm-created opening in the building and contends that the building owner's testimony is insufficient to establish a genuine issue of material fact.[84]  Axis posits that using Google Earth images is standard in the insurance industry and that its underwriting file is irrelevant.[85]

Although Muha cannot offer opinion testimony as to the cause of the damage, the sum of the other testimony creates a disputed issue of material fact as to the cause of the water intrusion and whether it is covered by the policy.  Consequently, Axis's motion for summary judgment is denied.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Axis's *Daubert* motion *in limine* to exclude the testimony and opinions of Michael Gurtler and Joseph Rickett (R. Doc. 33) is DENIED.

---

[81] *Id.* at 5-6.
[82] *Id.* at 6-11.
[83] R. Doc. 44 at 1-8.
[84] *Id.* at 1-6.
[85] *Id.* at 2, 6-8.

IT IS FURTHER ORDERED that Axis's *Daubert* motion *in limine* to exclude the testimony, opinions, and report of Tina Nabhan (R. Doc. 34) is GRANTED.

IT IS FURTHER ORDERED that Axis's *Daubert* motion *in limine* to exclude the testimony, opinions, and report of Nedal Nabhan (R. Doc. 34) is DENIED. However, Nedal Nabhan may not testify about any estimate to repair property damage that has already been repaired.

IT IS FURTHER ORDERED that Axis's *Daubert* motion *in limine* to exclude the testimony, opinions, and report of Christina Muha (R. Doc. 34) is GRANTED as to excluding her as an expert witness. The motion is DENIED as to excluding her as a fact witness.

IT IS FURTHER ORDERED that Axis's motion for summary judgment (R. Doc. 35) is DENIED.

New Orleans, Louisiana, this 25th day of January, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE