UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 2715 MARIETTA, LLC | CIVIL ACTION |
| VERSUS | NO. 22-3292 |
| AXIS SURPLUS INSURANCE COMPANY | SECTION M (1) |

## ORDER & REASONS

Before the Court is a motion filed by plaintiff 2715 Marietta, LLC ("Plaintiff") for reconsideration of this Court's December 19, 2023 Order & Reasons granting defendant's motion for partial summary judgment and dismissing Plaintiff's bad-faith claims.[1] Also before the Court is Plaintiff's alternative motion to certify the December 19 decision for interlocutory review pursuant to 28 U.S.C. § 1292(b), if the Court denies Plaintiff's motion for reconsideration.[2] Defendant Axis Surplus Insurance Company ("Axis") responds in opposition to both motions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

**I.    BACKGROUND**

This is an insurance coverage dispute arising out of damage to Plaintiff's property allegedly sustained during Hurricane Ida, which made landfall on August 29, 2021. At that time, Plaintiff's property was insured by Axis under a policy that provides coverage for direct physical loss or damage to the structure caused by or resulting from a windstorm.[4] The policy, however, excludes coverage "for loss or damage caused by or resulting from … [w]ear and tear [or] [r]ust or other

---

[1] R. Doc. 37 (citing R. Doc. 32).
[2] R. Doc. 38 (citing R. Doc. 32).
[3] R. Doc. 48.
[4] R. Doc. 6-1.

corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself …."[5] The policy also includes a pre-existing damage clause that excludes coverage "for any loss or damage which: (a) occurred prior to the inception of the policy regardless of whether such damages were apparent at the time of the inception of this policy; or (b) occurs after the inception of this policy but arises out of workmanship, repairs or failure to repair prior to the inception of this policy."[6]

On March 1, 2022, six months after Hurricane Ida made landfall in Louisiana, Plaintiff made a claim with Axis for storm-related roof damage that caused water to leak into the interior of the building.[7] Axis responded to the claim and assigned a field adjuster, who inspected the property.[8] The field adjuster found that the building's "metal roof show[ed] heavy signs of rust and wear and tear," resulting in "water damage in multiple rooms, offices and hallways …."[9] He also noted that the roof showed "prior repairs and patches," but he "did not see any apparent wind damage to the roof system" or "'lifted' metal panels due to high winds."[10] Moreover, he noted that the type of roof repairs he observed – namely, the application of roofing tar to the fasteners and joints on the metal roof – "will easily deteriorate and separate over time."[11] The field adjuster recommended an inspection by an engineer.[12]

Axis then hired Forcon International Corp. ("Forcon") to inspect the property.[13] A professional structural engineer employed by Forcon inspected Plaintiff's property and found that the 30-year-old metal roof "is severely corroded and has been patched numerous times throughout

---

[5] *Id.* at 79.
[6] *Id.* at 130.
[7] R. Docs. 17-4; 17-5.
[8] R. Docs. 17-5; 17-6; 17-7.
[9] R. Doc. 17-7 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4.
[13] R. Doc. 17-8.

2

the years."[14] He also noted that "[t]he roof and gutters are beyond [their] useful service life" and that "[n]o roof damage could be attributed due to winds from Hurricane Ida."[15] Instead, the Forcon engineer opined "that rain during Hurricane Ida entered an already corroded and faulty roof" due to "deteriorated patches and corrosion throughout the roof."[16] He further opined that roof damage "occurred over the years" and not as the result of "a one-time event."[17]

On May 6, 2022, citing the wear-and-tear and rust/corrosion exclusions and relying on the findings of the initial insurance adjuster and the Forcon engineer, Axis's independent adjuster informed Plaintiff that there was no coverage for the roof damage and resulting water intrusion.[18] Then, on June 27, 2022, without providing any additional photographs, invoices, estimates, or other documentation, Plaintiff's counsel wrote to Axis demanding the policy limits for the roof claim.[19] Axis, relying on the insurance policy, the adjuster's report, and the Forcon report, rejected the demand.[20]

Thereafter, Plaintiff hired Public Service Adjusting, L.L.C. ("PSA") to inspect the property.[21] PSA found $298,252.09 in damages to the property, which Plaintiff demanded from Axis as "undisputed" amounts due.[22]

Axis responded by retaining another engineer, Kevin Vanderbook of Veco Consulting, LLC ("Veco"), to evaluate the conflicting estimates.[23] Vanderbook opined that any water intrusion "was due to the poor condition of the roof" and that "[i]t is likely this roof has been leaking

---

[14] *Id.* at 1-4.
[15] *Id.* at 4.
[16] *Id.*
[17] *Id.*
[18] R. Doc. 17-9.
[19] R. Doc. 17-10.
[20] R. Doc. 17-11.
[21] R. Doc. 17-13 at 2.
[22] *Id.*
[23] R. Docs. 17-14 at 1; 17-15.

sporadically for many years as evidenced by the poor condition of the roof surface and numerous previous repairs."[24] In a supplemental report, Vanderbook explained that he compared satellite images of the property from various dates between March 2013 and January 2019.[25] He said the images demonstrate that there was no patching or repair to the roof in 2013, but that beginning in 2014, the images show sealant applied at the overlap seams and repairs to the ridge.[26] Also, in January 2018, repairs are visible at the northwest corner of the roof.[27]

On November 10, 2023, Plaintiff submitted to Axis an expert report dated November 3, 2023, that was prepared by Michael Gurtler and Joseph Rickett of Gurtler Bros. Consultants, Inc. ("Gurtler Bros.").[28] Gurtler inspected the property on October 27, 2023.[29] By then, the roof had been replaced.[30] Rickett, a licensed civil engineer, wrote the analysis portion of the report.[31] The Gurtler Bros. report stated that the property sustained damage caused by the wind and rain of Hurricane Ida, including "wind-created openings in the roofing, flashing and gutters" that allowed water to enter the building.[32] Notably, Gurtler did not observe any wind-created openings in the roof, but instead, based this opinion on the tenant's eyewitness account of water intrusion during the storm and his own training and experience regarding storm-related building damage.[33]

In the meantime, on September 15, 2022, Plaintiff had filed this suit asserting breach-of-contract and bad-faith claims against Axis.[34] According to Plaintiff, the insured property sustained storm-related roof damage that resulted in water infiltrating the building, which had not occurred

---

[24] R. Doc. 17-15 at 3.
[25] R. Doc. 17-16 at 2.
[26] *Id.*
[27] *Id.*
[28] R. Docs. 17-17; 33-4.
[29] R. Doc. 33-3 at 4.
[30] *Id.* at 10.
[31] R. Docs. 33-4 at 20; 33-6 at 4.
[32] R. Doc. 33-4 at 1-3.
[33] R. Doc. 33-3 at 10-16.
[34] R. Doc. 1 at 1-10.

prior to Hurricane Ida.[35]  Plaintiff alleged that Axis's failure to pay its claim after receiving the PSA report was bad faith and that Axis's insurance adjusting process was "tantamount to bad faith treatment" because it was performed "well below accepted industry standards."[36]

Axis filed a motion for partial summary judgment, seeking dismissal of Plaintiff's bad-faith claims.[37]  This Court, relying on well-established principles of Louisiana law, granted the motion because the undisputed facts surrounding the adjustment process demonstrate that Axis did not act in bad faith in denying Plaintiff's insurance claim.[38]  Rather, Axis, acting within the bounds of the applicable Louisiana law, relied on expert analyses of the damage and the policy language to dispute coverage for Plaintiff's claim.[39]

## II.   PENDING MOTION

Plaintiff seeks reconsideration, or alternatively, certification for interlocutory review, of this Court's December 19, 2023 Order & Reasons that granted Axis's motion for partial summary judgment and dismissed Plaintiff's bad-faith claims.  Plaintiff, relying on *Sugartown United Pentecostal Church Inc. v. Church Mutual Insurance Co.*, 2024 WL 62947 (5th Cir. Jan. 5, 2024), argues that bad faith is a question of fact that must tried by a jury and that this Court impermissibly made credibility determinations with respect to the competing expert testimony in granting Axis's motion for partial summary judgment.[40]  Plaintiff further argues that, without reconsideration or immediate appeal of the subject order, this case cannot settle and will need to be tried twice because Plaintiff will appeal any jury verdict that does not include bad faith and it is confident this Court's pretrial dismissal of the bad-faith claims will be overturned based on *Sugartown*.[41]

---

[35] *Id.* at 3.
[36] *Id.* at 4.
[37] R. Doc. 17.
[38] R. Doc. 32.
[39] *Id.*
[40] R. Docs. 37-1; 38-1.
[41] *Id.*

In opposition, Axis argues that Plaintiff has not met the standards for reconsideration or interlocutory appeal because this Court properly applied Louisiana bad-faith caselaw holding that statutory penalties are inappropriate when an insurer has a reasonable basis to defend a claim and acts in good-faith reliance on that defense.[42] Next, Axis contends that Plaintiff's reliance on *Sugartown* is misplaced.[43] Axis points out that *Sugartown* is factually distinct from the case at bar because (1) the insurer there conducted one lone, sub-par inspection of the insured property, compared with Axis's multiple, thorough inspections; (2) the insurer there failed to timely pay an undisputed amount, which did not occur here; and (3) the plaintiff there presented evidence that the HVAC system functioned properly prior to the storm, whereas here the evidence shows that the roof suffered from long-term corrosion and wear and tear before the storm.[44] Finally, Axis argues that *Sugartown* does not stand for the proposition that summary judgment is inappropriate where there is a dispute among experts, as Plaintiff suggests.[45]

### III.   LAW & ANALYSIS

#### A. Plaintiff's Motion for Reconsideration

Plaintiff seeks reconsideration of an interlocutory order. Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure.[46] Under that rule, a "court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted). Rule 54(b) "'reflect[s] the inherent power of the rendering district court to afford such relief from

---

[42] R. Doc. 48 at 1-7.
[43] *Id.* at 7-16.
[44] *Id.* at 10-13.
[45] *Id.* at 13-16.
[46] Plaintiff states that its motion is made pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. However, those rules pertain to final judgments.

interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)) (internal quotation marks omitted). However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (observing that if "the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] ... the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court may revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis, alterations, and quotation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment.").

Reversal of this Court's December 19, 2023 Order & Reasons is not warranted. In that order, this Court properly applied long-standing Louisiana law to the undisputed facts of the insurance adjustment process in this case to conclude that Axis did not act in bad faith but rather legitimately relied on expert opinions and the policy language to dispute coverage. Under Louisiana law, an insurer acts in bad faith for failing to tender payment within a certain amount of time after receiving a satisfactory proof of loss if that failure was "arbitrary, capricious, or without probable cause." *See* La. R.S. 22:1982, 22:1973. "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem.*

*Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003)). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). However, "when there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021). In other words, "[a]n insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss." *Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009). Indeed, "[i]t is settled law that when an insurer has a reasonable basis for defending a claim and acts in good-faith reliance on that defense, statutory penalties are inappropriate." *Jones v. Gov't Emps. Ins. Co.*, 220 So. 3d 915, 924 (La. App. 2017).

Despite Plaintiff's protestations, *Sugartown* does not alter Louisiana bad-faith law or this Court's application of it to the case at bar. In *Sugartown*, the Fifth Circuit, considering an appeal after a jury trial, held that it could not disturb the jury's verdict because there was no "manifest error" in the jury's finding that the insurer in that case acted in bad faith. *Sugartown*, 2024 WL 62947, at *7. In reaching this conclusion, the appellate court considered first that the insurer clearly failed to pay an undisputed amount within the statutorily prescribed 30-day period. *Id.* That did not occur here. There was never an undisputed amount that Axis failed to pay. Although Plaintiff classifies the PSA estimate as "undisputed," this is wishful thinking at best. Axis has always disputed the extent of, and its liability for, the claim. Importantly, Axis did not ignore the PSA estimate, but instead continued to adjust the loss by seeking an opinion from another engineer before continuing to deny the claim.

Second, citing *Louisiana Bag*, the Fifth Circuit in *Sugartown* stated that whether the insurer acted arbitrarily, capriciously, or without probable cause was a fact question for the jury, and then, citing a case not related to property insurance disputes, noted that "[i]n a 'battle of the experts,' a jury 'must be allowed to make credibility determinations and weigh the conflicting evidence in order to decide the likely truth of a matter.'" *Id.* (quoting *Foradori v. Harris*, 523 F.3d 477, 516 (5th Cir. 2008)). These isolated quotes from *Sugartown* must be considered in the context of the case. In *Sugartown*, there was evidence that the insurer's initial "inspection was neither thorough nor within industry standards." *Id.* at *2. Such evidence is not present in this case. Here, the uncontroverted evidence establishes that Axis sent multiple professionals, both insurance adjustors and engineers, to inspect the property. There is nothing in the record indicating that any one of them performed a deficient inspection, much less all of them. Further, the *Sugartown* panel did not cite *Louisiana Bag* for the proposition that bad faith is always a fact question for the jury, for that would not give a full picture of Louisiana jurisprudence. To be clear, *Louisiana Bag* does not hold that bad faith is always a question for the jury. The cited portion of *Louisiana Bag* actually states in full: "In addition, we are aware that whether an insurer's action was arbitrary, capricious or without probable cause is essentially a fact issue to be determined by the trial court and not to be disturbed on appeal absent manifest error." *La. Bag*, 999 So. 2d at 1120. Notably, the preceding sentence in *Louisiana Bag* states: "[W]e recognize that La. R.S. § 22:658 is penal in nature, that it is to be strictly construed and that the stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment." *Id.* (quotation omitted). In instances, then, like *Sugartown*, where there is an unpaid but undisputed portion of a claim or there is evidence of a shoddy claim investigation, there may exist a bad-faith issue that must be tried. But, as plainly stated by the Louisiana supreme court throughout its opinion in *Louisiana Bag*, "an

9

insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss." *Id.* at 1116; *see also id.* at 1114 ("[W]hen there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."), 1120 ("An insurer has a recognized right to withhold payment of disputed amounts in a claim for which there are substantial, reasonable and legitimate questions as to the extent of its insurer's liability or the insured's loss."). The Court in the case at bar simply determined that the uncontroverted summary-judgment evidence established the existence of a substantial, reasonable, and legitimate dispute as to the extent of Axis's liability and of Plaintiff's loss. Thus, under Louisiana law, there was no bad faith.

Moreover, in *Sugartown* the Fifth Circuit, citing *Foradori* – a case that did not involve a property insurance claim, much less a bad-faith failure to pay such a claim – stated that a jury must be allowed to make credibility determinations and weigh the evidence when there is a "battle of the experts." Plaintiff uses this statement to suggest that this Court, in granting Axis's motion for partial summary judgment and dismissing Plaintiff's bad-faith claims, improperly made credibility determinations regarding the competing experts. That is not so. The *Sugartown* panel only made this statement after concluding there was sufficient evidence of late payment of an undisputed claim and of a deficient inspection to allow the bad-faith claim to go to the jury. Thus, the battle of experts there was over the insurer's claims handling, not the extent of the insurer's liability or the insured's loss. Here, the competing expert opinions regarding the cause of the damage and amount of Plaintiff's alleged loss go to the merits of Plaintiff's underlying insurance claim, not the bad-faith claim. Plaintiff's bad-faith claim is premised on the notion that Axis failed to pay an undisputed amount of loss, which was not shown, or that it engaged in shoddy adjustment

practices, for which Plaintiff has not presented any evidence. In concluding that the summary-judgment evidence established the existence of a legitimate coverage dispute, the Court did not decide that Axis was justified in denying the claim, only that it did not act arbitrarily, capriciously, or without probable cause in doing so. This determination did not require any analysis as to the credibility of the experts. At bottom, on the summary-judgment record before the Court, there is no proof that Axis acted in bad faith even if the jury eventually disagrees with Axis's coverage position. *See Kodrin*, 314 F. App'x at 680 (observing that, because Louisiana law presumes that an insurer acts in good faith unless the insured proves otherwise, bad-faith penalties cannot be imposed "any time an insurer denies coverage and a jury disagrees," as that "would unduly pressure insurers to pay out claims that they have reason to believe lie outside the scope of coverage, solely to avoid penalties later"). A contrary holding would essentially require that a bad-faith claim go to the jury in every case involving a coverage dispute. This is not Louisiana law. Therefore, the motion to reconsider is denied.

### B. Plaintiff's Motion to Certify Order for Interlocutory Appeal

"An order denying a motion to remand is not appealable as a final decision within the meaning of 28 U.S.C. § 1291; standing alone, such a ruling cannot be appealed unless certified by the district court under 28 U.S.C. § 1292(b)." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 539 (5th Cir. 2005). Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals … may thereupon, in its discretion, permit an appeal to be taken from such order ….

Thus, a party moving for interlocutory appeal in the district court must demonstrate that (1) the court's order involved a controlling question of law, (2) there is substantial ground for difference of opinion about the question of law, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). All three criteria must be satisfied for an order to be certified for interlocutory appeal, *see Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981), and the burden is on the moving party to show the necessity of the appeal. *Chauvin v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007). Interlocutory review is generally reserved for "exceptional" cases because the basic structure of appellate jurisdiction disfavors piecemeal appeals. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996).

    1. **Whether a controlling issue of law is involved**

"On interlocutory review, 'the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Ridgeway v. Stryker Corp.*, 2017 WL 5503747, at *3 (E.D. La. Nov. 16, 2017) (quoting *In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012)) (emphasis and alteration omitted). "An issue of law is controlling when it has the potential to impact the course of the litigation." *Dorsey v. Navient Sols., Inc.*, 2015 WL 6442572, at *2 (E.D. La. Oct. 23, 2015); *see also In re Cella III, LLC*, 619 B.R. 627, 634 (E.D. La. 2020). Moreover, "'an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings.'" *In re Cent. La. Grain Co-op., Inc.*, 489 B.R. 403, 411 (W.D. La. 2013) (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006)). Here, Louisiana law on bad-faith insurance adjustment is well settled. Plaintiff takes issue with this Court's application of the law to the facts of this case, not the law itself.

### 2. Whether the question is one involving substantial ground for difference of opinion

A substantial ground for difference of opinion exists:

(1) when a lower court rules in a way that appears to conflict with the rulings of all appellate courts that have decided the issue, (2) when the circuits are in dispute and the Court of Appeals of the relevant circuit has not decided the issue, (3) when complicated issues of foreign law arise, or (4) when the case presents difficult questions of first impression.

*Dorsey*, 2015 WL 6442572, at *2. Because the applicable law is settled, the question advanced by Plaintiff involves no substantial ground for difference of opinion. In other words, Plaintiff has not shown that this Court has ruled in conflict with settled jurisprudence, much less a circuit dispute, a complicated issue of foreign law, or a difficult question of first impression.

### 3. Whether an immediate appeal will materially advance the ultimate termination of the litigation

Having found no controlling issue of law that involves a substantial ground for difference of opinion, this Court need not determine whether an immediate appeal will materially advance the ultimate termination of the litigation.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's motion for reconsideration (R. Doc. 37) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to certify order for interlocutory review (R. Doc. 38) is DENIED.

New Orleans, Louisiana, this 8th day of February, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE